Tuckee, P.
The first question in this case arises upon the demurrer to the declaration. The causes of the demurrer not having been specially set forth, we are left to infer the probable objections to it. It appears to recite accurately the contract between the parties and to aver distinctly the plaintiff’s performance in part. It then alleges the failure on the part of the defendant *7 to furnish materials, the overthrow and destruction of the house arising from the defendant’s having failed to have it underpinned, and from a violent tempest which blew it down, and that after that event, the defendant would not permit the plaintiff to work upon the house, and would not pay him for the work he had done. The breach then consists in the defendant’s not permitting the plaintiff to finish the work, whereby he would have earned the stipulated wages, and in not paying him for the work actually done before the destruction by the tempest. Now I take it, that the supposed fault in the declaration, consists in the omission to aver that the plaintiff did complete the house, and in laying as a breach that the defendant after the destruction of the building, refused to pay for the work that had been previously done. For it was said in the argument, that the contract was entire, and that the workman could recover nothing until the whole work was completed, as the covenant was dependent.
Nothing is more true than that where a contract is entire, and the covenants are dependent, the plaintiff is, in general, obliged to aver and prove a complete performance of all that was to be done and performed on his part, before he is entitled to demand payment from the other party. But to this well established rule, there is the equally well established exception, that where the defendant has prevented a performance by the plaintiff on his part, it is not necessary that the plaintiff should aver or prove a complete performance to entitle him to his action. He may recover without doing so, and it is sufficient to shew a readiness to perform, and that he was hindered by the défendant. 1 Chitt. Plead. 318. 2 Wms. Saund. 352. n. 3. 1 Gwyl. Bac. Abr. Conditions. Q. 3. p. C78. Jones &c. v. Barkley, 2 Doug. 684. The declaration here contains two distinct allegations, which shew the hindrance by the defendant: 1. that he failed to furnish materials, which was a precedent *8 act to be done by the defendant: 2. that after the house was blown down, the defendant would not permit the plaintiff to proceed with the work. “ If a man be bound to build a house &c. he is excused, if the obligee refuse to let him build it, for he cannot come upon the land against his will1 Bac. Abr. 678. If indeed the defendant can shew good reason for hindering him, then the hindrance will be no excuse. As, in this case, if the blowing down of the house had proceeded from the plaintiff’s fault, the defendant might well have refused to go on with the building. Or, if the plaintiff had refused to go on with the building unless he was paid for the work that had been destroyed, the defendant would have been justified in refusing to permit him to proceed, provided he could shew that the plaintiff had no right to insist on such a condition. Now, this was, very obviously, the real question between these parties. The house was blown down by a tempest which neither party could have averted, and the question really was, on whom the loss from this act of God should fall. If it must be borne by the defendant, then he can have no excuse for refusing to let the plaintiff proceed with the work according to contract, and is bound to pay for that which had been actually done according to the contract prices. Moreover, as he has deprived the plaintiff of the profits of what may have been a gainful contract, and may have involved him in the expense of procuring workmen, and making other preparations for the fulfilment of his engagement, he is liable for such damages as a jury of the country may ascertain to have been incurred by him by reason of the breach of contract. He is not entitled, indeed, to the full contract price of all the work which was to have been done, whether it was done or not. But as a workman thus unexpectedly thrown out of employment, must sustain injury thereby, that injury ought to be fairly estimated and compensated by the verdict of a jury.
*9 The whole case then turns upon the question, Who , . , , , . must bear the loss caused by the storm : I answer, the defendant. This cannot be denied, unless it can be . shewn, that there was an engagement, express or ímplied from the nature of the contract and transaction, that the builder should take the risque. For I take it to be an axiom, that no man can be bound to insure the property of another, but by contract express or implied, and on adequate consideration. Now, in this case, the property was emphatically Clark's. As soon as the house was raised, it became a part of his freehold. Nay more, the timbers and all the materials were his, for they had been furnished by him. And as to the work,’ that became his property at every step of its progress: for every shingle that was nailed on, and every plank that was laid, became, in its new condition,—fashioned and improved as it was, and applied to its proper purpose in the building, by the skill and industry of the workman,—the exclusive property of Clark. It was Clark's house, then, that was blown down, and Clark must abide the loss, unless Franklin has by contract, express or implied, engaged to abide and insure against the risque. Were it otherwise, the destruction of the house by tempest, when a single pane of glass alone was wanting to its completion, would equally fall upon the workman.
That there was an express contract or engagement on the part of Franklin to take the hazard of destruction by fire or tempest is not pretended. Was such an engagement implied ? I think not. If the builder had undertaken to furnish the materials, and to build the house out and out, for a gross or lumping sum, there might be more reason for the suggestion that this was a contract of hazard : we might suspect, that the gross sum agreed for, covered perhaps the hazard, which the builder might be supposed to have taken upon himself from the form of the contract. But here is a contract *10 by the measurement,—by the piece ; a contract for the mere compensation usually allowed for labour and skill bestowed. There is no room to imply that a premium was given for the risque, and therefore there is no room to imply insurance or agreement to abide the risque. If we could imply it, the hazard instead of diminishing, would increase, precisely in the ratio that the builder had fulfilled his undertaking; for he would be liable until the last nail was driven into the building, and this too without receiving any consideration for this implied contract of assurance.
The implied agreement to abide the risque of loss by accident or by act of God, if it exist at all, requires to be defined. Does it extend only to the carpenter’s own labour ? Does it embrace the materials ? Does it comprehend the labour of others ? If we consider Ross v. Overton, 3 Call 309. as applicable to this case (which has been cited as applicable, though I do not think it is so), then the builder is answerable for all. Indeed, if answerable at all, by what exact limit shall we circumscribe his responsibility ? And if we do not circumscribe it, then he is to be considered as responsible, not only for his own labour, but for the materials, and for the plaisterer’s and bricklayer’s, and other bills; and pari rations, if they had contracted to do their part of the work in like manner, they too must be deemed insurers, and thus each builder would become an insurer of the whole building until ready for delivery. These consequences shew, I think, the fallacy of the position that the workman must abide the hazard.
There are few cases to be found upon this subject. Chitty in his treatise on contracts, p. 170. says—“The destruction of work by an accidental fire or other misfortune, before it is finished or delivered, does not deprive the workman of his right to remuneration, to the extent of the work performed; unless, by the express and uniform custom of any particular trade, no payment is to be *11 made until the work be completed or delivered.” He cites Menetone v. Athawes, 3 Burr. 1592. and Gillett v. Mawman, 1 Taunt. 137. The first of those cases is very imperfectly reported. A ship was sent to a shipwright’s dock to be repaired, and she was burned by accident when the repairs were nearly finished; yet the shipwright recovered for the repairs so far as they had progressed. The second case was that of a printer. He had undertaken to print a translation of The travels of Amcharsis for the defendant, who furnished the paper; the whole was burned by accident (without default of the printer) when the work was nearly completed j the printer claimed compensation for the printing; the defendant relied on the custom of the trade, “ that where a work is burnt before it is completed, the printer is not allowed for his labour.” The counsel and the court distinctly admit the general law to be, that the destruction by fire or misfortune, does not deprive the workman of his right to remuneration for the work done; but the court decided, “ that the custom of the trade was fully proved, and as far as it extended, controlled the general law.”
Upon the whole I am of opinion that the declaration is substantially good, and that judgment was rightly given for the plaintiff on the demurrer.
Then, as to the defendant’s exceptions. The first and second were to the refusal to give instructions, which I think were too broadly asked, and therefore properly refused. The instruction moved for and set forth in the third bill of exceptions, ought not to have been altogether refused, but should have been given with a modification, or rather explanation—that the plaintiff was entitled to the full contract price for the work actually done, and was also entitled to such damages for the loss of the residue of the job as a jury might think proper to give, or to a fair compensation for the loss he sustained by his disappointment, but not to the full value *12 of thé work which yet remained to he done. The instruction given in the fourth exception should also have been qualified by adding to the hypothetical case supposed—“ that the plaintiff had been willing to complete the work but had been ■ wrongfully prevented by the defendant.” The instructions stated in the fifth exception, are, I think, substantially right.
However, on the ground that the third instruction asked for the defendant, should have been given with the modification I have suggested, instead of being wholly refused, which may have led to an exorbitant verdict, I think the judgment should be reversed, the verdict set aside, and the cause sent back for a new trial.
The other judges concurred. The entry was, “that there was error in this, that the court ought to have given the instruction asked for in the third bill of exceptions, qualified however by this further and additional instruction, that if the appellee was wrongfully arrested by the defendant in proceeding to complete the building, the jury was authorized to allow him such compensation in damages for his disappointment as 'should to them appear just and reasonable.” Therefore, judgment reversed with costs, and cause remanded to the circuit court, with directions to set aside the verdict, and order a new trial of the issues, upon which the instruction above indicated should be given if asked for by either party.*

It seems to the reporter, that the court misapprehended the import of the third hill of exceptions—that the instruction asked for by the defendant, as there stated, related to the measure of compensation for the work which had been'performed on the house which was destroyed, not for the defendant’s breach of his covenant in refusing to let the plaintiff complete the building. If so, the circuit court was right, according to the opinion of this court, in refusing the instruction. But this is unimportant in respect to the authority of the decision.